## E. N. HOLMES *v.* I. E. RAY.

APPEAL FROM CIRCUIT JUDGE, FOURTH CIRCUIT.

SUBMITTED SEPTEMBER 24, 1900.    DECIDED JANUARY 3, 1901.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

The complainant having failed to prove by a preponderance of the
evidence the existence of a certain agreement of partnership relied
upon in the bill of complaint and essential to the maintenance of
the suit, the bill is dismissed.

OPINION OF THE COURT BY PERRY, J.

This is a suit in equity wherein the complainant claims that
on or about March 20, 1899, by oral agreement, the respondent
and himself formed a partnership concerning certain land situ-
ate at Olaa, Puna, Hawaii, and that subsequently respondent
denied the making of any such agreement. The prayer of the
bill is "that defendant be required to show the amount of
moneys expended and expenses incurred under and by virtue
of said partnership," and that "plaintiff be adjudged and de-
creed to be the owner, as such partner of defendant, of an un-
divided half interest in and to" the said land "upon payment
by plaintiff of one-half of such sum as the court shall find that
defendant has expended in and about said partnership."

Respondent in his answer denies that any partnership agree-
ment was made or entered into. The Circuit Judge dismissed
the bill, and from that decree the complainant appealed to this
Court.

The undisputed facts of the case are as follows: Maroichi
and Kuwabara, Japanese, had possession of certain land known
as Lot Number 47, Olaa, under what is known as a right of

purchase lease from the Hawaiian Government. The parties to this case have proceeded on the theory, and we assume for the purposes of this case, that by virtue of said lease and of the law then in force, the said lessees were entitled, upon complying with certain conditions as to the making of improvements on Lot 47, to purchase from the Government additional land in Olaa of the area of about 158 acres.

Respondent, having secured a verbal agreement for the sale to himself of Lot 47 upon Maroichi's obtaining fee simple title thereto from the Government, in turn made an agreement of sale of said lot to one O. A. Steven, who was acting for, and at once assigned all his interest to, complainant, for the agreed price of sixty dollars per acre. One hundred dollars cash was paid to respondent on account of the purchase price. The agreement of sale from Maroichi to respondent was reduced to writing March 17th, 1899, on which date Maroichi also entered into another written agreement with Ray for the conveyance to the latter of the 158 acre tract upon obtaining title thereto from the Government, Ray agreeing to pay therefor the cost thereof to Maroichi, to wit, three dollars per acre, and five hundred dollars additional.

On or about the 20th of the same month, Ray went to complainant and represented that he could purchase from the Japanese the 158 acres of land provided the latter were able to make the requisite improvements on Lot 47 and thus secure title to the additional land, and made a proposition that the two become partners with reference to said new land, one of the elements of the proposition being that Holmes bear the whole expense of clearing Lot 47. As to what the other terms of the proposal were, there is some conflict in the evidence, but it is undisputed that, whatever the terms, Holmes declined the offer. From this point, the evidence becomes contradictory. Holmes' testimony is that he then proposed to Ray that each pay one half of the cost of improving Lot 47 and one half of the cost of the 158 acres, that he, Holmes, "put Lot 47 in the whole business," and that the two share the profits equally; and that

Ray then and there accepted the offer. Ray, admitting that such a proposal was made (except that he makes no mention in this connection of the 47 acres being put in the business), denies just as positively that he accepted, and affirms, on the contrary, that he specifically declined the same. He adds that the conversation ended by Holmes telling him "to go ahead and plant the coffee anyway" and by his replying that he would do so and "take the chances" himself.

Upon the evidence, we cannot find that any agreement was entered into. The testimony of the two parties as to whether there was an acceptance or a rejection of the proposal made, is entirely in conflict as above noted. There is nothing in the record to indicate a lack of veracity on the part of the one any more than on the part of the other,—the Circuit Judge remarks that the two stand equally well in that respect in the community in which they live. Their testimony is evenly balanced; nor is there anything in their subsequent conduct, so far as disclosed by the evidence, which throws light on the subject or will justify the statement that a preponderance of the evidence exists one way or the other.

Four things are mentioned as being of possible assistance in the enquiry: first, the fact that Ray once said to Holmes, in effect, "We are going to have trouble with the Japs over the land. The wife won't sign." Holmes testified that he understood that Ray was referring to the 158 acres and that he was thereby recognizing the existence of the agreement. Ray's testimony is that he was referring to the contract of sale of Lot 47 which he held, and other evidence clearly shows that at the time Ray was having some trouble with the wife of Maroichi concerning a release of her dower rights in Lot 47. There was no recognition by Ray in this conversation of the existence of a partnership agreement. The same is true as to the second matter referred to, to wit, the request, by telephone, by Ray at Olaa of Holmes at Hilo for $500 "on account of the land business." Although Holmes understood that Ray was referring to the transaction concerning the 158 acres, we are satisfied

from the evidence that Ray regarded this merely as a loan or, at the option of Holmes, as a payment in advance on account of Lot 47. Ray was a long distance from Hilo, and no one at his office knew the combination of the lock of his safe. He needed the money, as he thought at the time, for a certain payment to the Japanese on account of Lot 47, but owing to a subsequent arrangement no such payment was made and Ray promptly returned the $500 to Holmes with the explanation that he did not need it.

Third. Holmes testifies that on a certain day Ray exhibited to him a typewritten copy of a proposed form of agreement for the sale and purchase of the 158 acres, and that he, Holmes, made various suggestions concerning the same. Ray says that he has no recollection of exhibiting any such copy, but is unprepared to deny that he did so. Assuming that he did exhibit the instrument, the relations between the parties concerning Lot 47 are sufficient to explain Ray's act. Considered in connection with (fourth) the fact that at no time did Ray call upon Holmes for any share of the expenses of improving Lot 47, the exhibition of the instrument is certainly insufficient to turn the scales in favor of the complainant.

The evidence is consistent with the theory that both Holmes and Ray testified in good faith, the former believing that a partnership agreement had been entered into and the latter convinced that no such agreement existed. The parties might well have misunderstood each other at the original conversation out of which this suit arose. If that was the case, there was no meeting of the minds of the parties and consequently no agreement. In any event, complainant has failed to prove by a preponderance of the evidence the existence of the agreement.

The decree appealed from is affirmed.

*C. Creighton* for complainant.

*Smith & Parsons* for respondent.